UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BURNHAM ASSOCIATES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF BEVERLY, )<br>)<br>Defendant. )<br>) | CIVIL ACTION<br>NO.: |

**COMPLAINT**

Plaintiff, Burnham Associates, Inc. ("Plaintiff", "Burnham" or "Contractor"), as and for its complaint against Defendant City of Beverly ('Defendant" or "City"), states as follows:

**SUMMARY OF THE ACTION**

1. Burnham is a party to a City dredging contract to dredge certain waterways in Bass River in the city of Beverly, Massachusetts as fully set out in contract documents.

2. Burnham timely mobilized marine equipment on site only to find out that the City did not have proper permitting to depose of the materials as was set forth in the contract.

3. The City had Burnham stand by while it attempted to rectify the permitting problem only to terminate the contract thirty-four days after Burnham had mobilized.

**PARTIES**

4. Burnham is a Massachusetts corporation with a principal place of business located in Salem, Massachusetts.

1

5. The Defendant is a municipality duly authorized under the laws of the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6. This Court has admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333 as this matter arises out of a maritime contract for dredging, removal, and off-site disposal of sediment in the navigable channel and boat basin.

7. Venue is proper pursuant to 28 U.S.C. §1391 as all relevant actions took place within Massachusetts and the parties all reside in Massachusetts.

## FACTUAL BACKGROUND

### A.     Permitting

8. In 2008, the City of Beverly with help from experts developed a plan to dredge a part of the Bass River.

9. As part of that 2008 plan to dredge, the City through its experts conducted tests of sediment to assess its suitability for offshore disposal.

10. The 2008 sediment test results were prepared in a report and submitted by the City through its experts to the Army Corp of Engineers ("ACOE") for review.

11. In a Memorandum dated November 20, 2008, the ACOE issued a suitability determination, based upon the City's test results that "the disposal of the material as proposed will not cause any significant undesirable effects…."

12. In 2017, the City decided to move ahead with the dredging project by having its expert prepare and file with the ACOE, the City's application for the dredging permit.

13. To update the 2008 test results, the City through its experts conducted an evaluation of the sediment conditions to support regulatory compliance for the offshore disposal of the dredged materials.

14. In April of 2017, the City's expert issued a report concluding that there was "no direct evidence of sediment contamination in the Bass River, which was not previously documented in environmental reviews up to 2008, was found in this evaluation."

15. On July 20, 2017, the City's expert submitted the City's dredging permit application to the ACOE.

16. On March 18, 2018, the City obtained Section 401/404 USACE Permit as the Department of the Army, Permittee No. NAE-2015-00699 ("Permit") which was appended to the RFP.

17. As stated on the Permit, the City was authorized to undertake the dredging project by the ACOE pursuant to Section 10 of the rivers and Harbors Act of 1899 (33 U.S.C. 403) and Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1413).

18. Paragraph 13 in the Special Conditions of the Permit states in relevant part:

> "For the initiation of disposal activity … the permittee or the permittee's representative must notify the Corps at least ten (10) working days before the date that disposal operations are expected to begin. … Disposal operations must not begin … until the Corps issues an Open-Water Disposal Approval Letter for the initiation or continuation of open water disposal.  The letter will include disposal point coordinates to use for this specific project at that time.  These coordinates may differ from those specified for other projects using the same disposal site or even from those specified earlier for this project.  … Disposal operations may start as soon as the Open-Water Disposal Approval Letter is issued.

**B.     The Request for Proposal or Invitation For Bid ("RFP")**

19. On August 13, 2019, the City entered into a new contract with its expert that required the expert *inter alia* to coordinate with the ACOE for offshore disposal at the Massachusetts Bay Disposal Site.

20. On September 5, 2019, the City through its engineering experts put out a Request for Proposal or Invitation for Bid Number: 19-025 for the Bass River Dredging, Project Number 1903181 ("RFP").

21. The Bass River Dredging Project consisted of the dredging, removal, and off-Site disposal of sediment in the navigable channel and boat basin within the river.

22. The successful bidder was required to transport and place the dredged material in the Mass Bay Offshore Disposal location in conformance with the contract specifications, USACE requirements and regulatory approvals.

**1.     RFP Relevant Excerpts - Information For Bidders**

23. Paragraph 13.2 of the Information for Bidders contained in the RFP stated that

> "Within fifteen (15) days of the receipt of agreement signed by the successful bidder and receipt of acceptable bonds, the Awarding Authority shall sign the Agreement and return a duplicate of the executed Agreement to the Contractor.

24. Paragraph 13.3 of the Information for Bidders contained in the RFP stated that

> "A Notice to Proceed shall be issued within ten (10) days of the execution of the Agreement."

**2.     RFP Relevant Excerpts - General And Special Conditions**

25. The words "Notice to Proceed" are defined in the General Conditions of the RFP as "a written notice to the Contractor of the date on which he is to begin the prosecution of the work for which he has contracted."

26. Pursuant to the General Conditions contained in the RFP, the Contract Documents and Contract includes Notice to Bidders, Information for Bidders, Proposal, Bid Bond, Agreement, Performance and Payment Bond, General Conditions, Special Conditions, Construction Specifications, Drawings, Addenda, Notice of Award, Notice to Proceed, the Change Orders.

27. Pursuant to the Special Conditions of the RFP, "[t]he Contractor shall commence work within seven (7) calendar days after the dates specified in the Notice to Proceed…."

### 3. RFP Relevant Excerpts - Technical Requirements

28. Under the Technical Requirements – Summary of Work section of the RFP, Burnham was required to direct any communications received from the ACOE to the City.

29. Under the Technical Requirements – Price and Payment Procedures section of the RFP in relevant part in regard to Mobilization stated the following:

> A. Mobilization shall be measured by the Contract Price LUMP SUM and shall be measured once only for the entire contract. Lump sum shall not exceed 50% of total Base Bid price.
>
> B. Payment to complete Mobilization shall include, but is not limited to:
>
> 1. Movement of personnel, equipment, and materials to the Site, if such movement is not included in any other bid item….
> 2. Relocation of equipment and remobilization to suit vessel operations.
> 3. Provide Project management oversite.
> …
> 9. Site preparation, Turbidity curtains, and project clean up.
> …
> 12. Compliance with all applicable U.S. Coast Guard regulations for the use of temporary signaling equipment,

                    including any required coordination, during the performance of the Work.

13. Demobilization of all personnel, equipment, and materials used to complete the work that is not already included in any other bid item.

…

17. Mobilization will be paid Sixty Percent (60%) of the lump sum price upon completion of mobilization to the work site. An additional twenty-five percent (25%) will be paid to the contractor upon the acceptance of his verification survey. The final fifteen percent (15%) will be paid only after the contractor has received the written notice from the town to proceed with final demobilization and has successfully demobilized to the satisfaction of the City.

30. Under the Technical Requirements – Regulatory Requirements – Permits, the City was required to "Section 401/404 USACE Permits.

**D.  Award**

31. On September 29, 2019, Burnham submitted his response to the RFP in the amount of $2,812,400.00 and won the contract for the dredging project.

32. On November 6, 2019, the City's expert submitted the formal request to the ACOE for the open water disposal coordinates pursuant to the Permit.

33. On November 8, 2019, the City's expert emailed Burnham that it was waiting on the response from the ACOE regarding the request for the coordinates.

34. On November 11, 2019, Burnham began to express concerns to the City's expert for the weeks delay in the start of the dredging project as it had to be completed by February 15, 2020.

35. On November 14, 2019, Burnham and the City executed the Contract.

36. Pursuant to the Contract, work was to "commence within SEVEN CALENDAR DAYS following the effective date of this Agreement, subject to unsafe weather conditions."

### E.     Notice to Proceed

37. On November 15, 2019, the City's expert, at the City's direction, provided Burnham with a Notice to Proceed for the dredging of the Bass River so that Burnham could take full advantage of the then existing "fish-window."

38. In the November 15, 2019 Notice to Proceed, the City's expert stated "[w]e understand that you are currently waiting on weather conditions to improve before mobilizing, please notify the City and [City's expert] when you begin to move equipment to the site."

39. On November 26, 2019, Burnham mobilized its equipment and personnel to Beverly. The City personnel and Beverly Harbor Management Authority members were present to view the large dredging equipment pass underneath the Beverly/Salem Bridge on its way to the entrance to the Bass River.

40. On November 27, 2019, pursuant to the terms of the Contract, Burnham sent an invoice to the City of Beverly for $450,000 which represented 60% of the Mobilization costs.

41. On December 2, 2019, the ACOE asked the City's expert for the original 2008 biological test results.

42. On December 3, 2019, the City's expert sent the test results to the ACOE.

43. On December 3, 2019, pursuant to Article 6.1 of the Contract, the City's expert, as recommended to the City to pay the Mobilization invoice for $450,000.

44. On December 4, 2019, the City's expert wrote to Burnham saying that it was contacted by the ACOE and that the ACOE acknowledged the concerns about the delay and would provide a response by Monday, December 9, 2019.

45. On December 9, 2019, the ACOE announced that the coordinates would not be issued.

46. On December 10, the ACOE wrote to the City as follows:

> Having reviewed the November 20, 2008 suitability determination for your proposed Bass River project they determined that the data … showed the carcinogenic risk over the EPA threshold … as well as non-carcinogenic risk over the EPA threshold.  The testing data for this site indicates that the material is not suitable for open-water disposal pursuant to Marine Protection, Research and Sanctuaries Act of 1972.  Therefore the Corps of Engineers cannot issue an Open-Water Disposal Approval Letter for the Massachusetts Bay Disposal Site.

47. On December 12, 2019, the City's expert sent a letter to Mayor Michael Cahill and key City staff recommending that the City direct the immediate demobilization of Burnham.

48. On December 18, 2019, Burnham Associates asked the City stating in relevant part:

> "[Burnham] continues to have our dredge plant, vessels, and crew standing by at the Bass River dredge site ready to begin this delayed job, but it remains on hold until the permitting/disposal coordinate issue is worked out between the [ACOE and the City]
>
> We were hoping to maintain our current mobilization on site while this impasse was resolved, and then begin the work.  However, as previously mentioned, we cannot do so indefinitely. …
> Unless [the City] can offer [Burnham] assurance by the end of this week that an accord is at hand to allow us to being operations, we will have to demobilize to mitigate the continuing accrual of charges for our equipment and crew who have been standing by since December 3, and are currently unable to perform work on other current or potential projects due to this delay.  If the City would like [Burnham] to remain standing by, it must be understood that we are incurring significant costs to remain onsite indefinitely.  These continuing costs must be recovered, should a solution to execute this project not come to fruition."

49. On December 19, 2019, the City responded to Burnham with the following:

> "The City learned today that disposal site approval will not be forthcoming from the [ACOE] in a manner that will allow the project to proceed this season.  As such, in response your letter seeking guidance about whether to demobilize at this time, the City believes that it is everyone's best interest that you do so."

50. On December 20, 2019, Burnham proceeded to demobilize.

51. On December 27, 2019, Burnham provide the City with an Invoice for the standby time that it incurred from the mobilization to the time of demobilization that totaled $452,955.75.

52. On February 10, 2020, Burnham provided the City with an Invoice for the cost of demobilization in the amount of $300,000.

53. As of the filing of this suit, the City has not paid Burnham any money owed under the Contract.

54. As required by the contract documents, the parties have attempted to mediate the matter but were unsuccessful.

## COUNT I
## Breach Of Maritime Contract

55. Plaintiff realleges each and every allegation above.

56. Defendant has breached the terms of the Contract and failed to pay the Invoices according to the terms and conditions as set forth in the Contract.

57. As a result of the breach by the Defendant, the Plaintiff has suffered damages as will be demonstrated at the time of trial.

## COUNT II
## Unjust Enrichment

58. The Plaintiff realleges and incorporates herein paragraphs 1 through 54 above.

59. The Defendant has been unjustly enriched as a result of the Plaintiff performed work for the Defendant without getting paid.

60. As a result of that unjust enrichment, the Plaintiff has suffered damages as will be demonstrated at the time of trial.

WHEREFORE, Plaintiff, Burnham Associates, Inc. hereby prays for the following relief:

1. Plaintiff prays that this Honorable Court finds that the Defendant City of Beverly breached the terms of the Contract and award the Plaintiff all damages that it is due;

2. Plaintiff prays that this Honorable Court finds that the Defendant City of Beverly has been unjustly enriched by the Plaintiff and award the Plaintiff quantum meruit damages;'

3. Award Plaintiff interest, attorneys fees and costs; and

4. Plaintiff prays that this Honorable Court order any other relief that it deems appropriate.

    Respectfully submitted,
    Burnham Associates, Inc.
    By its attorneys,

    /s/ David S. Smith
    David S. Smith, Esq.
    BBO No.: 634865
    Farrell Smith O'Connell
    Aarsheim Aprans LLP
    27 Congress Street, Suite 109
    Salem, Massachusetts 01970
    Tel: 978-744-8918
    Fax: 978-666-0383
    dsmith@fsofirm.com

Dated: June 11, 2020